## SCRIPTURE *v.* FRANCESTOWN SOAPSTONE CO.

| 50 | 571 |
|----|-----|
| 68 | 417 |
| 50 | 571 |
| 169 | 408 |
| 50 | 571 |
| 71 | 317 |
| 71 | 318 |

B., who was president and one of the directors of the Francestown Soapstone Company, on the 24th day of May, 1867, sold and transferred to the plaintiff a certificate for forty-five shares of the capital stock of said company, for which the plaintiff paid him $95 per share, the par value being $100 per share. The certificate provided that the shares were " transferable in person, or by attorney, only on the books of the company, on the surrender of this certificate." B. continued to act as president and director up to January 27, 1868. On the 28th day of January, 1868, the shares, not having been transferred on the books of the company, were attached on a writ in favor of the company against B., as the property of B. *Held,* that the company were chargeable, under the circumstances, with notice of the sale and transfer of the shares by B. to the plaintiff; and that, in the absence of fraud in fact on the part of the plaintiff, he was entitled to hold the shares against the attachment.

ASSUMPSIT, by Gilman Scripture against the Francestown Soapstone Company, for not delivering to the plaintiff certificates for forty-five shares of the capital stock of the Francestown Soapstone Company, alleging that the plaintiff purchased those shares of Frederick A. Barton, on the twenty-fourth day of May, 1867, he then being the owner of said stock, and having a certificate for the same, signed by the president and treasurer of said company, which the said Barton on that day assigned to the plaintiff, for value received, by an indorsement on the back of the certificate; and on February 3, 1868, the said Barton caused said certificate and assignment to be delivered to the treasurer of said company, by reason whereof the company promised to issue to the plaintiff a new certificate for said shares, and to pay him the dividends on said stock; alleging, also, a request by the plaintiff to issue said certificate to him and pay him the dividends thereon, and a refusal to do so.

Upon the trial here, upon the general issue, it appeared that the plaintiff purchased of the said Barton the forty-five shares ·of stock, and paid therefor ninety-five dollars per share, the par value being $100, and that said Barton transferred the same to plaintiff by his endorsement upon the back of the certificate which he held for them; that said certificate so transferred was presented to the treasurer of said company, and a new certificate for those shares demanded by the plaintiff of the treasurer, which he declined to issue to him. The certificate issued to said Barton provided that the shares were "transferable in person, or by attorney, only on the books of the company, on the surrender of this certificate," and the transfer on the back of it was made " subject to the provisions of the charter and to the by-laws of the company." The reason assigned for refusing to issue a new certificate to the plaintiff was, that the shares had, previous to the time of such demand, been attached as said Barton's property, on a suit in favor of said company

against him.   Said sale and transfer were made May 24, 1867, and an attachment was in fact made January 28, 1868, as above set forth.   In reply·to this, the plaintiff urged that the defendant had notice or knowledge of the aforesaid sale and transfer before the said attachment, and offered to prove that F. A. Barton, who transferred these shares to plaintiff, was president of said company, and acted as their general agent in superintending the affairs thereof, and was such on May 24, 1867, at the time of the issuing of the certificate of said shares to him, and the transfer by himself to plaintiff, which was all done on May 24, 1867, and he continued so to act until about January 27, 1868 ; that the agent who succeeded said Barton, and who procured the attachment and caused a levy to be made on these shares, was a director in 1867, and knew of the sale and transfer of these shares from Barton to plaintiff, prior to and at the time of the attachment, and told, on one or more occasions prior to said attachment, that plaintiff owned $5000 of the stock ; that the treasurer of said company had actual notice of the sale and transfer by Barton to plaintiff, and issued notice to plaintiff to attend the annual meeting of the stockholders of said company, in June, 1867, it appearing that said plaintiff, in June, 1867, had no shares standing in his name on the books of the said corporation ; that after the attachment was made, on January 28, 1868, by this defendant, on a writ in its favor against Barton as his property, the president of the company gave plaintiff to understand that these shares· would not be levied upon,—that the defendant did not intend to hold them on said attachment.

And thereupon the cause was taken from the jury for the purpose of determining, as matter of law, whether the evidence offered was competent to prove notice or knowledge in the company, and whether, with such knowledge or notice, the attachment would be valid to hold these shares against the plaintiff.   At the hearing, either party may read the pleadings, the certificate and transfer, the charter and by-laws of said company, and the writ in favor of the company against said Barton, and the return thereon, and the execution and levy thereon.

*A. W. Sawyer*, for the plaintiff.

I. If a corporation refuse to enter on its books a regular transfer of shares, and cause the same to be sold as the property of the former owner, an action of assumpsit lies by the purchaser from the former owner.   *Pinkerton* v. *Railroad*, 42 N. H. 424 ; *Hill* v. *Pine River Bank*, 45 N. H. 300 ; *Sargent* v. *Franklin Insurance Co.*, 8 Pick. 90 ; *Wyman* v. *American Powder Co.*, 8 Cush. 168 ; *Gray* v. *Bank*, 3 Mass. 364 ; *Commercial Bank* v. *Kortright*, 22 Wend. 348 ; *Kortright* v. *Bank*, 20 Wend. 91.

II. The free sale of shares shall not be restricted by the by-laws of such corporation ; and all such by-laws heretofore or hereafter made shall be void.   This law was in existence on May 24, 1867, when these shares were transferred.   Compiled Laws 147, sec. 21 ; Laws, 1849, chap. 860, sec. 2 ; General Statutes, chap. 134, sec. 13.

III. These shares were transferred on May 24, 1867, by Barton to Scripture, and, as between them, the legal and equitable title passed to Scripture; and as between Scripture and the corporation, an equitable title, until the corporation had knowledge or notice: after notice, the legal title, as well as equitable title, was in Scripture. *New York and N. H. Railroad Co.* v. *Schuyler*, 34 N. Y. 30. If there had been a record of the transfer on the back of these certificates made in the books of the corporation, the equitable and legal title would have been in Scripture as to everybody. The plaintiff contends that knowledge or notice of the transfer by Barton to Scripture is equivalent to a record. The record could only give notice of that legal title: if the company had that notice or knowledge, it would be an act of supererogation to look into the record to ascertain what they already knew.

IV. Attaching these shares by this defendant, after it had knowledge of the transfer and sale by Barton to Scripture, was a fraud on Scripture, and the attachment and levy are thereby postponed as to Scripture. *Colby* v. *Kenniston*, 4 N. H. 262. The object of the statute, which requires deeds in certain cases to be recorded, was, to give notice, and protect creditors and purchasers who might subsequently derive title from the grantor. With respect to all other persons, the recording is immaterial. Creditors and purchasers *having notice* of the existence of an unrecorded deed, are bound by *that notice* the same as they are by the record. *Brown* v. *Manter*, 22 N. H. 468; *Stowe* v. *Meserve*, 13 N. H. 52; *Wark* v. *Willard*, 13 N. H. 389; *Rogers* v. *Jones*, 8 N. H. 264; *Farnsworth* v. *Childs*, 4 Mass. 637; 2 Washburn Real Prop., book 3, chap. 4, p. 594, sec. 60; *Hastings* v. *Cutler*, 24 N. H. 481; *James* v. *Morey*, 2 Com. 291. By the common law, a sale of goods and chattels, not delivered, is sufficient to transfer the property as between the vendor and vendee, and a subsequent purchaser or attaching creditor, *with notice*. *Carter* v. *Willard*, 19 Pick. 5; *Denny* v. *Warren*, 16 Mass. 421; *Young* v. *Walker*, 12 N. H. 502; *Treadwell* v. *Brown*, 43 N. H. 292; *Cooper* v. *Newman*, *Howard* v. *Cooper*, 45 N. H. 339; *Houston* v. *Blake*, 43 N. H. 117; *Carpenter* v. *Cummings*, 40 N. H. 158. It is *knowledge or notice* that makes the unrecorded deed good against a subsequent purchaser or an attaching creditor. In the sale of property not delivered, it is *the knowledge* of the sale that saves it to the vendee against a subsequent purchaser or attaching creditor. In attachments by a sheriff, where the property is suffered to remain with the debtor in certain cases, *it is knowledge or notice* of a subsisting attachment that makes it good against another officer who attaches it with such knowledge. The statute law, in its very terms as to the record of a deed, is literally inflexible. "No deed of bargain and sale, mortgage, or other conveyance of any real estate, or any lease for more than seven years from the making thereof, shall be valid to hold the same against any person but the grantor and his heirs only, unless such deed or lease be attested, acknowledged, and *recorded*, according to the provisions of this chapter." General Statutes, chap. 121, sec. 4.

It is difficult for the plaintiff to see any distinction, so far as knowledge or notice is concerned, in the case of an unrecorded deed, sale

and attachment of property, and the sale and transfer of shares, where there has been a transfer of the stock by endorsement on the back and a delivery of the certificate.  If knowledge or notice to the attaching creditor that the debtor has parted with his title by deed postpones the attachment, why is not the defendant's attachment and levy postponed in this case?. The defendant knew that Barton had sold and transferred these forty-five shares to Scripture, and consequently knew that Barton had parted with all his property in them, had lost all power over them, that Barton could not change their destination. How, then, could defendant attach what it knew Barton did not possess ?  Is there any conscience in undertaking to hold, what defendant knew was Scripture's property, as the property of Barton ?   *There is no equity in it.*

V.  These shares were transferred by Barton to Scripture on the 24th day of May, 1867, by assignment on the back of the certificate ; the rights of Scripture were fixed on that day, under the *then* existing law.   There was not at that time any statute law requiring, in express terms, certificates of stock transferred on the back, in a corporation like this, to be recorded.   Shares in railroad corporations were required to be entered on the books, but such requirement was peculiar to railroad corporations.   Pamphlet Laws, 1862, chap. 2,623, sec. 1.   In addition to the common law mode of transferring shares by assignment on the back of the certificate, the legislature had provided for the transfer of shares in a manufacturing company by deed under hand and seal, and a record of the same.   Such provision was peculiar to manufacturing companies.   The common law mode of transferring on the back of the certificate was not suspended, but at that time existed, as a concurrent mode, with the mode of transfer by deed ; and the provision for a record, alike in both modes, was first introduced into the General Statutes, chap. 134, sec. 11, and is there as a new provision.   It may well be held in this State, that on the 24th of May, 1867, these forty-five shares were to be regarded as personal property, and passed by the delivery of the certificate duly transferred—at that time these shares could be conveyed by will—would descend from intestate to his heir, could be assigned without deed by the delivery of the certificate, with the endorsement of the transfer, for a valuable consideration, and, like the delivery of chattels, the delivery of the certificates would pass the shares.   They are the subject of a contract to sell, and, independent of any enactment, they may be regarded as personal property.   In Maine and Massachusetts it has been held that a person to whom shares have been *bona fide* transferred, will hold them without any certificate ; and if a company refuses to give a certificate, the vendee loses no rights as a stockholder.   The learned counsel in *Pinkerton's* case, ex-Chief Justice PERLEY, says : "At the present time and under the laws of this State, stock in corporations, so far as the right of the creditor to take it for debt is concerned, has no resemblance whatever to a chose in action. It stands, except as to the manner in which the creditor proceeds to obtain his lien, exactly on the same footing with other attachable personal property."  Judge BELLOWS, in that case, says : " It is not ma-

terial to determine the precise character of this property, whether such stocks be regarded as choses in action or not." The cases cited refer to the several points raised under this paragraph. 8 Pick. 90 ; 10 Mass. 476 ; 17 Mass. 243 ; 1 R. I. 165 ; 7 N. H. 456 ; Angell & Ames on Corp., chap. 16, secs. 557, 565; 11 Shep. 356 and 273 ; 2 Pick. 243 ; 16 Mass. 94 ; 32 N. H. 402 ; 36 N. H. 563. Choses in action, at common law, pass by an actual transfer for a valuable consideration ; things bulky, which are deposited in a storehouse, pass by a delivery of the key ; goods at sea, by a transfer of the bill of lading by endorsement ; where goods are in the possession of another, a written order to deliver, which is presented, makes the sale complete ; bonds and bills of exchange, by assignment and endorsement and delivery, pass the debt.

If the legislature neglected, until the time of the General Statutes, to make it necessary for the transfer of stock on the back in such a corporation as this to be recorded, but prior to that time, and at the very time when these shares were transferred by Barton to Scripture, provided for the record of shares in railroad corporations, thereby making a distinction in the two corporations as to shares so transferred at common law on the back, this court may well hold the law to have been, on May 24, 1867, that, for the purposes of taxation, private liability, security of the corporation, ownership of the stock for the purposes of attachment to him who has no knowledge of the transfer, these shares may be held to be the shares of Barton, but to him who has notice of the transfer and sale, and as to any attachment after such notice, they were the property of Scripture. If the court shall hold that the rule is inflexible that these forty-five shares could not pass until a record was made of the transfer upon the books of this corporation ; that it required a record of them to make the sale complete or perfect, and that the record is itself the originating act in the change of the title, then such a holding would be in conflict with the reasoning of the learned chief justice in *Pinkerton* v. *Railroad*, 42 N. H. 455, because one instance is there named where these shares would have passed unrecorded as against an attaching creditor *without notice*, and that case is where *due diligence* was used to record the transfer. The plaintiff then starts with one case where the vendee holds against the record.

1. The use of due diligence in getting the transfer recorded is equivalent to a record.

2. Plaintiff contends that, as to an attaching creditor, *knowledge or notice* of the sale and transfer of those shares was equivalent to a record ; or if, in this case, circumstances came to the defendant which ought to put it on inquiry, and if followed up would have led to actual knowledge of the sale and transfer, and it neglected to act, then those circumstances are equivalent to a record. 1 Story Eq. Jur. 381 ; 45 N. H. 339 ; 46 N. H. 75.

Judge BELLOWS admits this principle in *Pinkerton's* case, where he says : " Indeed, it may be laid down as a general principle governing the transfer of every species of personal property, that, to be good against *innocent third persons*, such transfer must be accompa-

nied with such change of possession and indications of ownership as the nature of the thing·is capable of." So, also, Judge PERLEY recognizes, in his brief, the same principle on page 438 in *Pinkerton's* case. "The authorities are therefore in point, which hold that where the charter or a by-law provides that a transfer shall be void or inoperative till entered on the book, an antecedent transfer of the certificate is invalid against an attaching creditor *without notice ;*" and on page 437,—"The purchaser can give the statutory notice of his title by entering the transfer on the books required to be kept for that purpose, and must, if he means to set up his claim against a creditor who attaches *bona fide and without notice.*" The supreme court of Vermont recognize the same principle in *Sabin* v. *Bank*, 21 Vt. 362. "We entertain no reasonable doubt that the mode of transfer of stock pointed out in the charter is the only mode which the public are bound to regard as conveying the title. All persons *unaffected with notice to the contrary* are at liberty to act upon the faith of the title being where it appears upon the books of the corporation to be." So, also, in Massachusetts: shares cannot be effectually transferred, as against a creditor of the vendor, who attaches them *without notice* of any transfer. *Fisher* v. *Essex Bank*, 5 Gray 373. So in New York: "A purchaser, neglecting to have the transfer made on the books until after such stock is transferred to a *bona fide* holder *without notice*, loses his right to demand and have the transfer thereof made to him ; but the corporation would be liable to the holder of such certificate for permitting the stock to which he was entitled to be transferred to another, because they had *constructive notice* of these outstanding certificates." *N. Y. & N. H. Railroad* v. *Schuyler*, 34 N. Y. 30. "When a certificate of stock, with a power of attorney to transfer the same, is pledged to one by assignment valid between the pledgor and pledgee, but no transfer is made on the company's books, a *bona fide* purchaser *without notice* will be protected against the equitable rights of the pledgee. *N. Y. & N. H. Railroad* v. *Schuyler*, 38 Barb. 534.

"An assignment of stock in a corporation, merely by transfer of the certificate without a transfer on the books of the corporation, is not valid against the claim of a *bona fide* purchaser *without notice* of the same stock at a sale under an execution against the assignor." *Naglee* v. *Pacific Wharf Co.*, 20 Cal. 529 ; *Albert* .v. *Savings Bank*, 1 Maryland Ch. Decis. 407 ; *Leavitt* v. *Fisher*, 4 Duer N. Y. 1. "A person who, at a sheriff's sale, purchases shares knowing that the certificate of such stock has been hypothecated, is chargeable with notice of the fact, and takes subject to the claim of the pledgee." *Weston* v. *Mining Co.*, 5 Cal. 186—6 Cal. 425. "Courts of law, as well as courts of equity, are constantly, in all States where the common law prevails, in the habit of holding a prior assignment of the equitable interest in stock as superseding the rights of attaching creditors who attach the same with a full knowledge of the assignment." *Black* v. *Zacharie*, 15 Curtis 534, 3 Howard 514 ; *Bank* v. *Smalley*, 2 Cow. 770 ; *Gilbert* v. *Manchester Iron Co.*, 11 Wend. 628 ; *Commercial Bank* v. *Kortright*, 22 Wend. 348 ; *Quiner* v. *Marblehead Iron Co.*, 10 Mass. 476 ; *Sargent* v.

*Franklin Ins. Co.*, 8 Pick. 90 ; Angell and Ames on Corp., ch. 16, sec. 575.

If the company knew of this equitable title, and notified Scripture to attend the annual meeting in June, 1867, they thereby ratified and affirmed that title, and it became perfected into a legal title. The equitable interest of an assignee will be protected against all persons having notice of the assignment. *Thompson* v. *Emery*, 27 N. H. 269 ; *Hastings* v. *Cutler*, 24 N. H. 482.

Where a party has notice, actual or constructive, of the plaintiff's equities, he will hold subject to the plaintiff's equities.  *Crocker* v. *Crocker*, 31 N. Y. 507 ; *Shufeldt* v. *Pease*, 16 Wis. 659 ; *Hall* v. *Hinks*, 21 Md. 406 ; 1 Story Eq. Jur. 376, sec. 395 ; Sugden on Vendors 526.

VI. The only provision in regard to the transfer of shares is found in " Art. 10.  Transfer.  Shares may be transferred by assignment on the back of the certificate, and surrender of the certificate to the treasurer."

" ART. 9.  Certificates.  Certificates of shares, signed by the president, countersigned by the treasurer, and under the seal of the corporation, shall be issued to the stockholders in the form following, that is to say :

[SEAL.]      FRANCESTOWN SOAPSTONE COMPANY.

CAPITAL, $150,000.

No.....    Shares, $100 each.    ....Shares.

Be it known that........is the proprietor of....shares in the capital stock of the Francestown Soapstone Company, subject to the act of incorporation and by-laws of said corporation.

Given under our hands and the seal of the corporation, this....day of....A. D.....

........Treasurer.              .       ........President.

No mode of transfer is provided by the charter ; it is silent.

If it be contended that the provision contained on the face of the certificate is good as a contract although void as a by-law, the plaintiff further argues, that when the certificate, on the 28th day of January, 1868, or on the 5th day of February, 1868, was presented to the treasurer and a demand made for a new certificate to plaintiff, that was a performance of the contract so far as plaintiff was concerned ; and it then became the duty of the treasurer to make the transfer on the books.   The defendant could not shield itself by saying it attached these shares on January 28, 1868, before the certificates were presented, because at the time of the attachment defendant had notice of the equitable transfer to plaintiff ; and it was not only a fraud in law to make the attachment, knowing Barton had sold his interest in them and that Scripture had purchased them, but defendant was bound to know that after knowledge of such sale our courts would protect that equitable interest from attachment. . There is no difference in moral honesty, or in equity, or in law, in attaching after knowing that Barton had no interest in the shares, but that they were the property of Scripture, or,

when the shares were about to be presented to the treasurer for transfer on the books, and the treasurer should engage the attention of him until the president could go out and obtain an attachment of the shares as Barton's property, and then, with a *smooth and honest face*, claim to hold them on grounds of priority of lien because Scripture had neglected to get them recorded as his property.   There is no conscience in either case.

*George Y. Sawyer & Sawyer, Jr.*, for the defendant.

I. The evidence offered is not sufficient to prove notice to the corporation of the purchase of the shares by the plaintiff.   Barton, at the time of the attachment, had no connection with the corporation : his knowledge is therefore immaterial.   The general agent and treasurer are merely subordinate officers, placed by law under the authority of the board of directors. Gen. Stats., chap. 134, § 3. The supreme power is in that board, subject to the by-laws and direct votes of the corporation.   The management of the corporate affairs is in the hands of the directors.   They only can exercise the general corporate powers.  Gen. Stats. *qua supra*, Rev. Stats., chap. 141, § 2. They in fact represent the corporation ; and notice to others, if not brought home to them, is insufficient to charge the corporation.   Neither the general agent nor the treasurer has a voice in the corporate transactions, nor in the general management of the affairs, except in subordination to the authoritative managers, the directors.    It is surely unreasonable to hold that notice to any one of the agents or servants of the corporation, in many corporations amounting to hundreds in number, and having no other than clerical or ministerial duty to perform, is notice to the corporation.  The line can be drawn nowhere except between those holding subordinate offices, and those in whom the ultimate power is vested and who properly represent the corporation.

II. Upon the supposition, however, that the knowledge of Barton, or of the general agent or treasurer, or even of one of the directors of 1867, of the sale of May 24, 1867, is sufficient to charge the corporation with notice at the time of the attachment, the delay of the plaintiff until January 28, 1868, to take possession of the shares by calling for his new certificate, unexplained as it is, is conclusive evidence of a secret trust which renders the sale fraudulent *as matter of law*, and therefore void as to creditors.   *Pinkerton* v. *Railroad*, 42 N. H. 424.   Notice of a sale with such secret trust is no answer to the defendant's attachment.    The defendant, with notice of the sale, if the evidence is sufficient to prove it, was not bound to remain quiet forever.   When such unreasonable delay had occurred on the part of the plaintiff as to furnish evidence of a secret trust, such as would render the sale fraudulent *in law* as to creditors, the defendant, with or without notice, stood upon common ground with other creditors, and might avail itself of the negligence of the plaintiff when it amounted to presumptive evidence, in law, of fraud.   The attachment, made more than eight months after the sale, and without any movement on the

part of the plaintiff to take possession of the shares until after the attachment, if made with knowledge of the sale, was also made with knowledge of the secret trust which attended it, and of the fraud, in law, of which it is conclusive evidence.

III. Under the law of this State, the attachment is not defeated by knowledge of the sale brought home to the defendant. The numerous authorities collected in the plaintiff's brief, on this subject, have no application here. The question here is to be determined upon the provisions of our statute; and cases in other jurisdictions, where the statute provisions may not be like ours, are not in point. This is a manufacturing corporation, to which the provisions of chap. 141 of the Rev. Stats. were applicable on the 24th of May, 1867, the date of the sale. These provisions apply to all corporations "established on or after July 6, 1837, for the purpose of carrying on any kind of manufacture."—Rev. Stats., ch. 141, § 1.

The charter of this corporation—Laws of 1865, chap. 4,169, § 2—authorizes the company "to carry on the business of quarrying soapstone * * * * and manufacturing such stone * * * * into wares and merchandise."

The several provisions of chap. 141 of the Rev. Stats., material to this inquiry, are as follows: "Every stockholder shall have a certificate, signed by the treasurer, certifying his property in such shares," § 8. "Shares may be transferred by the proprietor thereof, by a deed under his hand and seal, and recorded by the clerk of the corporation in a book kept for that purpose; and the purchaser named in such deed so recorded, shall, on producing the same to the treasurer, and delivering to him the former certificate, be entitled to a new certificate," § 10. "When the treasurer of any manufacturing company within this State shall not be resident therein, a record of the ownership of the shares in such company shall be kept by the clerk thereof, and the said shares shall be liable to attachment as the property of the person who, by such record, shall at the time of the attachment appear to be the owner thereof," § 31. Other provisions on this subject, in force when the General Statutes took effect, and to be construed with these as statutory provisions *in pari materia*, are—" the clerk of every corporation shall annually file with the clerk of the town in which the corporation has its principal place of business, a list of the names and places of residence of all the stockholders, certified under oath," Comp. Stats., chap. 147, § 8, under the penalty of a fine for his neglect, § 11, and a penalty of fine or imprisonment, or both, in case of his wilfully omitting to return such list with intent to defraud a creditor of the corporation, § 12, which list shall be recorded by the town clerk, and any person whose name is so returned shall be deemed a stockholder until his name is struck out on a subsequent list, § 9; that any person, voting upon a share of which he is not the *bona fide* and absolute owner, or receiving the transfer of a share for the purpose of voting thereon, shall be punished by fine or imprisonment; and that executors, &c., may vote on shares held by them, and the pledgor of stock may vote thereon, § 19; and that shares may be attached by

leaving a copy with the clerk, treasurer, &c., chap. 195, § 13 ; that the persons having the care of the records of stock, must exhibit them to an officer having process for attachment under penalty for neglect, chap. 207, §§ 20, 21.   These provisions, in their whole scope and drift, indicate that the policy of the law of this State, down to the enactment of the General Statutes, was, that there should be no ownership or transfer of shares in any corporation to be recognized by the courts unless shown upon the record.   As to shares in corporations like this, by express provision a transfer of the stock was to avail nothing against an attachment until recorded.   Rev. Stats., chap. 141, § 31, *supra.*

The record was made the title and the transfer, and the policy of the law in all legislation upon the subject was not merely, as in the case of registry of deeds, to give information of the title for which notice without recording might be a substitute, but to furnish an authentic record, which, while it gave that information, would also determine membership in the corporation, the right to vote; private liability for debt, liability to taxation, and all other incidents of ownership.   Such authentic record would protect the corporation from confusion and embarrassment in paying out dividends, conducting their meetings, and, in all other corporate transactions, prevent a debtor stockholder from the fraudulent evasion of his creditors' rights, provide a plain and practical way of enforcing private liability for the corporate debts, and furnish security to the public against the fraudulent issue of shares and other abuses of the corporate franchise.   All these statutory provisions are reënacted in the General Statutes, and the policy which they indicate is confirmed, and, where it was previously limited to manufacturing corporations, is extended to all dividend paying corporations.   Gen. Stats., chap. 134, §§ 9, 10, 11, 14, 18, 19, 20, 25.

In sec. 11 it is expressly declared that the purchaser shall take a new certificate, *from the date of the record,* of his transfer, and then only in case there is no lien by attachment or otherwise upon the shares. The policy of our legislation upon this subject, as it has been gradually developed by successive enactments, from that of 1812, which first declared shares in corporations subject to process for debt, to the passage of the General Statutes, has been uniformly in one direction. The system established by the General Statutes, unless contravened by judicial decision, is effectual to guard against the mischiefs which the Stat. of Eliz. 13 was designed to prevent.   Courts of high authority have had frequent occasion to express regret that judicial interpretation had relaxed the salutary provisions of that statute.   The mischiefs resulting from a decision in our courts that notice of a sale of corporate shares is equivalent to the record of transfer, which the General Statutes require, would be greatly aggravated by the fact that this kind of property has expanded to such extent as to include a large proportion of the entire property of the country, is so widely distributed as to be held in larger or smaller amounts among all classes, and enters more extensively, perhaps, than any other class of property into all business negotiations.

*A. W. Sawyer*, in reply.

I. The counsel for the defendant are entirely mistaken, in their brief, when they assert that "the general agent or treasurer has no voice in the corporate transactions, or in the general management of the affairs, except in subordination to the authoritative managers, the directors." The by-laws, and chap. 141, sec. 2, Rev. Stats., are entirely in harmony, and give them coördinate and equal powers. The line which the defendant attempts to draw, between the powers of the directors and the agent and treasurer, does not exist. The business of every manufacturing corporation shall be managed by the directors thereof, and such officers and agents as the company shall appoint, &c. Rev. Stats., chap. 141, sec. 2.

Article 1 of the by-laws is as follows: " The officers of the corporation shall be a president, clerk, treasurer, and four directors. The said four directors, and the president, clerk, and treasurer, *ex-officio*, shall together constitute the board of directors for the management of the affairs of the corporation," &c. The general doctrine, that notice to the agent is notice to the principal, is undeniable. In this corporation the agent was the president, who was a director. The treasurer, who is a director, countersigns the certificate which is signed by the president. Notice must then be given the treasurer when a demand is made for a new certificate. He acts within the scope of his authority, in the surrender of a certificate and in issuing a new one, and notice to him is notice to the company. When the company is thus notified, it does not lose the notice. Change of officers does not take away the notice or knowledge: when once communicated to the company it ever after exists. *N. Y. & N. H. Railroad Co.* v. *Schuyler*, 34 N. Y. 84 ; Angell & Ames on Corp., sec. 305 ; Redfield on Railways 381, p. 382, note ; Hammond on Prin. & Agent 233 ; 13 Ves. 121 ; 1 Ves. 62 ; 1 T. R. 16 ; *Patten* v. *Insurance Co.*, 40 N. H. 375 ; *Campbell* v. *Insurance Co.*, 37 N. H. 35 ; *Marshall* v. *Insurance Co.*, 27 N. H. 157 ; *Hovey* v. *Blanchard*, 13 N. H. 145 ; *Bank* v. *Kortright*, 22 Wend. 349 ; *Lawrence* v. *Tucker*, 7 Greenleaf 195 ; *McEwen* v. *Insurance Co.*, 5 Hill 101.

II. When the question arises in the *proper place* whether there was a secret trust between Barton and Scripture, if Scripture fails to explain it, it will be in season for the court and jury to pass upon it. The plaintiff has had no opportunity to explain why he held these shares unrecorded; he had not proceeded to make that part of his case, which he proposed to make, when the single question arose whether notice to the defendant was equivalent to a record of the shares. The question was not raised at the trial term whether there was a secret trust. That is a question, among others, when properly raised, *for the jury*. Barton did not retain these shares or the certificates. There is no more a secret trust resulting from the fact that Scripture held these certificates, than there would be in a grantee withholding his deed from record. *Coolidge* v. *Melvin*, 42 N. H. 510 ; *Pinkerton* v. *Railroad*, 42 N. H. 424 ; *Paul* v. *Crooker*, 8 N. H. 288 ; *Winkley* v. *Hill*, 9 N. H. 31 ; *Boardman* v. *Cushing*, 12 N. H. 105 ; *At-*

bee v. *Webster*, 16 N. H. 362. The continued possession of personal property by the vendor, after a sale, is not *per se* fraudulent, but only evidence for the jury. *Brooks* v. *Powers*, 15 Mass. 244 ; *Homes* v. *Brane*, 2 Pick. 610 ; *Wheeler* v. *Train*, 3 Pick. 255 ; *Fletcher* v. *Willard*, 14 Pick. 464 ; *Macomber* v. *Parker*, 14 Pick. 497 ; *Allen* v. *Wheeler*, 4 Gray 123 ; *Haven* v. *Low*, 2 N. H. 13 ; *Lewis* v. *Whittemore*, 5 N. H. 364 ; *Ash* v. *Savage*, 5 N. H. 545 ; *Smith* v. *Lowell*, 6 N. H. 67 ; *Page* v. *Carpenter*, 10 N. H. 77 ; *Clark* v. *Morse*, 10 N. H. 236 ; *North* v. *Crowell*, 11 N. H. 251 ; *Ludwig* v. *Fuller*, 5 Shep. 162 ; *Bank* v. *Haskins*, 3 Met. 332.

III. The sale of these shares and the transfer of them were on May 24, 1867. The attachment of the shares by defendant was on January 28, 1868. The General Statutes went into operation the 1st day of January, 1868. The 31st section of chap. 141, Rev. Stats., was repealed by the adoption of the General Statutes, so far as the words "*and the said shares shall be liable to attachment, as the property of the person or persons who by such record shall, at the time of the attachment, appear to be the owner or owners thereof.*" When this attachment was made, no such provision of law was in existence. The plaintiff does not propose to amplify as to the policy of the law as it now exists, and as it did exist on the day of this attachment. The sale and transfer of these shares were *well known* to the corporation attaching ; if the law ever was, as is contended by the defendant, it has been changed ; and plaintiff contends that *knowledge* of the sale and transfer is equivalent to the record, so far as obtaining any rights by attachment is concerned, when such sale and transfer *are known*. The difficulties suggested in defendant's brief, as to taxation, private liability, right to vote, &c., are merely imaginary. See *Chesley* v. *Pierce*, 32 N. H. 402 ; *Haynes* v. *Brown*, 36 N. H. 563, where any anxious mind relative to the interests of a corporation may be relieved. No such imaginary difficulties were ever urged in case of an unrecorded deed. No such difficulties can exist in case of unrecorded shares. The wrong which sec. 31, chap. 141, Rev. Stats., might work upon an ignorant stockholder, may have been the reason why the law has been changed and that obnoxious feature left out ; for it is reasonable to assert that many men, married women, minors, and in fact persons unaccustomed to deal in stocks, might well suppose themselves to be owners if there was a transfer on the back of the certificates and a delivery of same to them. The less legislation New Hampshire has, which shall encumber and mystify the ownership of stock, the more readily will such stock pass into the hands of the common people. It is the policy of the law now, and was on the day of the sale of these shares and the day of their attachment, that " the free sale of shares in the stock of any corporation by the owner thereof shall not be restrained by the by-laws of any corporation." C. S. 147, 21 ; G. S., chap. 134, sec. 13. Are the court prepared to hold the law of New Hampshire to be that " the record is itself the originating act in the change of the title " ? Such law is peculiar to Connecticut. It is shown by authorities in Vermont, Massachusetts, New York, Maryland, California, &c., that actual knowledge of the sale and transfer is equivalent to a record. These authorities

are not to be ignored by a single stroke of the pen, or by saying they "have no application here."

In *Black* v. *Zacharie*, 15 Curtis *509, 3 Howard 483, to which the attention of the court is particularly called, Judge STORY says: " a provision in the charter of a corporation that transfers of its stock shall be made only on its books, is for the benefit of the corporation and *bona fide* purchasers." The general doctrine for which plaintiff contends is also laid down in the case *Railroad Co.* v. *Schuyler*, 34 N. Y. 80 (7 Tiffany), to wit, when the stock of a corporation is, by the terms of its charter or by-laws, transferable only on its books, &c., this is a regulation designed for the security of the corporation itself, and of third persons taking transfers of the stock *without notice* of any prior equitable transfer. It relates to the transfer of the legal and not to the equitable title. The transfer which Scripture took gave him certainly an equitable interest. The defendant knowing the transfer, and knowing that Barton was devested of all interest in the stock, could not make a valid attachment because the shares no longer belonged to Barton. The plaintiff affirms that *Pinkerton* v. *Railroad* recognizes this principle. The material point in the case then is, Will this court protect the equitable interest which Scripture took in these shares when they were transferred by Barton?

LADD, J.   The sale and transfer of these shares were made by Barton to the plaintiff May 24, 1867 ; and the case shows that the plaintiff paid $95 per share for them, the par value being $100.

It is alleged in the declaration, that on February 3, 1868, the plaintiff caused the certificate and assignment to be delivered to the treasurer of the company ; and it appears that the reason assigned for not issuing to him a new certificate was, that prior to that time, namely, on the 28th day of January, 1868, said shares had been attached as Barton's property on a writ in favor of the company against him.

If by the attachment a valid lien was created in favor of the company, it was under no obligation to enter the transfer on its books at the time the certificate was presented ; and the plaintiff cannot maintain this suit.

The question then is, What effect shall be given to the attachment made January 28, 1868 ?

The plaintiff offered to prove that at the time of the sale said Barton was president of the corporation, and acted as its general agent in superintending the affairs thereof, and continued so to act until January 27, 1868, the day before the attachment was made ; that the agent who succeeded Barton, and who procured the attachment and caused a levy to be made on the shares, was a director in 1867, and knew of the sale and transfer of the shares from Barton to the plaintiff prior to the time of the attachment; and that the treasurer of the company had actual notice of the sale and transfer as early as June, 1867 ; and other facts tending to show knowledge of the sale by the corporation at or about the time of the transaction.

We think this evidence was clearly admissible for the purpose

proposed.    The president and treasurer, by the by-laws, were directors *ex-officio ;* and it is fair to suppose that they were active members of the board, participating largely in the control and management of the affairs of the corporation.    But even if those officers had not been members of the board of directors, there would probably be no difficulty in holding that notice to a general agent, who has the superintendence of the affairs of a corporation, is notice to the corporation, and therefore that the defendant is chargeable with knowledge possessed by its president and general agent, Barton.

Angell and Ames on Corp., § 305, and cases in note ; *Hovey* v. *Blanchard,* 13 N. H. 145 ; *Marshall* v. *Ins. Co.,* 27 N. H. 157 ; *Campbell* v. *Ins. Co.,* 37 N. H. 35 ; *Patten* v. *Ins. Co.,* 40 N. H. 375 ; *Fitzherbert* v. *Mather,* 1 T. R. 12; *N. Y. & N. H. Railroad Co.* v. *Schuyler,* 34 N. Y. 84.

We are thus brought to the question whether the attachment made by the defendant, with knowledge that the shares had been previously sold and transferred by Barton to the plaintiff, will hold them, for the reason that the transfer had not been made on the books of the company according to the provision contained in the certificate.

It does not appear that any mode of transfer is provided in the charter, and the only provision in the by-laws on that subject is contained in Art. 10, as follows :    " Shares may be transferred by assignment on the back of the certificate, and surrender of the certificate to the treasurer."    This corresponds with the provision in the certificate, except that the words " only on the books of the company " appear in that instrument.

It is not necessary to inquire whether the provision contained in the by-laws was authorized by the charter ; nor whether there is any difference in legal effect between a provision in the charter and one in the by-laws which have been adopted in pursuance of an authority conferred by the charter ; nor whether the provision in the certificate should have any effect by way of contract between the share owner and the corporation ; for we think that, by a fair construction of the general law of the State in force at the time of this transaction, a transfer of shares in a corporation of this sort, to be complete and perfect for all purposes, must be entered upon the books of the company—Rev. Stats., chap. 141 ; *Pinkerton* v. *The M. & L. Railroad,* 42 N. H. 424—the object being, as is well said by defendant's counsel in their brief, " not only to give notice of the title, but to furnish an authentic record that would determine membership in the corporation, the right to vote, private liability for debt, liability to taxation, and all other incidents of ownership," &c.

It being admitted, then, that, for the protection of these various rights and interests of the corporation, the public, and creditors of the stockholders, the law provides that the title of a purchaser of shares shall not be complete, as against those having these various interests, until the transfer is entered on the books of the company, it becomes a very important inquiry to ascertain what is, in point of fact, the origin and basis of a purchaser's title to such shares when they pass from seller to

buyer.    Does it originate in and rest upon the contract of sale between the parties, or is it a creation of law, dating its birth from the record of the transfer on the company books ?

A share in a corporation, which has for its object a division of profits among its stockholders, has been defined to be " a right to partake, according to the amount of the party's subscription, of the surplus profits from the use and disposal of the capital stock of the company to the purposes for which the company is constituted." Angell and Ames on Corp., § 557.

It cannot be disputed that this right is *property* of a definite and important character, with many of the qualities of visible, tangible, personal property, and having a value, and as capable of appreciation as vessels or merchandise, or other personal chattels.    SHAW, C. J., in *Fisher* v. *Essex Bank*, 5 Gray 377.    From this it follows, by inevitable inference, that it may be the subject of sale as much as any other species of property, real or personal, so that, as between vendor and vendee, the title may pass by their own act, and be thereby vested absolutely in the vendee.

It seems too clear for argument, that the ownership of the shares passes from the seller to the buyer by force of the contract of sale, and not by operation of law ; and if that be so, the buyer's title, so far as the seller is concerned, attaches the moment this contract is fully consummated between them.

This kind of property, being an intangible right, somewhat akin to the right to receive money due upon a bond or other chose in action, is incapable of actual manual delivery.    All the seller can do, that corresponds at all to the delivery of personal chattels in other cases of sale, is, to hand over to the buyer his certificate, with a sufficient assignment by deed or otherwise to entitle him to a transfer of the shares on the books of the company.    When the seller has done this, his power and duty in the matter are ended, and it is at the option of the purchaser whether the transfer shall be recorded or not.

If the purchaser omits to have the record made, he can claim no rights as a member of the corporation ; and he also incurs the further risk of having his title defeated by a subsequent attachment or sale to a *bona fide* purchaser.

It is difficult to see any substantial difference between the position of this plaintiff after the sale and assignment of the shares to him by Barton and before a transfer was made on the books, and that of the grantee in a deed of land before his deed is recorded.    In both cases the seller has parted with his title, and, as to him, the buyer has acquired it.    It is only third persons in either case whose rights or interests are affected by the omission.

In the case of an unrecorded deed, the grantor continues to be clothed with evidence of ownership after the conveyance, very similar to that which remains with the seller of shares before the transfer has been entered on the books.    The record shows that he is still the owner of the land, when in fact he is not ; and, so far as any interest a creditor can have in the matter is concerned, the same is

precisely true in the case of shares in a corporation sold but not transferred on the books.

The statutes which we hold require the transfer of shares to be entered on the books of the corporation kept for that purpose, are certainly no more explicit and absolute than that which requires the recording of deeds. The object of the law, so far as creditors are concerned, is the same in both cases.

As between the parties the title passes by contract and not by the record in both cases alike. *

---

* The case of John C. Durgin against William T. Mitchell, tried before Judge Woodman, in Grafton county, at the (Plymouth) May term, A. D. 1855, illustrates one phase of this question:

This was a writ of entry, to recover about thirty-eight acres of land, with the appurtenances, in Orange, in the county of Grafton.

Plea, *nul disseizin.*

In the trial, the demandant alleged that a deed in his claim of title was not truly recorded, and for that reason a copy could not be used; that the original deed was in the hands of the counsel for the tenant.

It appeared also that a notice had been served to produce the same on trial.

The demandant then proved the deed in the possession of tenant's counsel. After proving the execution of the deed, the witness stated its contents, and that he sent it to the register's office to be recorded. The demandant then proposed to prove, by the same witness, that after it was returned there was a certificate on the back of the deed that it had been recorded; also to prove the contents of the certificate; which was objected to, and ruled out by the court, for the reason that the demandant had admitted that the deed had not been truly recorded; to which the demandant excepted.

After the above ruling of the court, the counsel for the tenant delivered the original deed to the demandant's counsel. The demandant then offered the said original deed, with the following certificate on the back of it:

"Rec'd, May 25, 1849, 6 h. P. M. Recorded liber 202, folio 319, and examined.

          "Attest:                                    LUKE AIKEN, Reg."

Also a copy of a deed same parties as in the above, with the same description, except in the original deed the conveyance is of the "southerly half of the first hundred acre lot," &c., and in the copy, the conveyance is of the "northerly half," &c., of the same lot.

On the copy of the deed there is a copy of the certificate of reception, same as on the original. On the back of the copy is the following certificate:

"Grafton, ss., Aug. 5, 1854; the within is a copy of the record. See lib. 202, folio 319, and examined.

          "Attest:                                    SILVESTER REDING, Reg'r."

It is difficult to suggest any reason for holding that actual notice of an unrecorded deed to a subsequent purchaser or attaching creditor shall be equivalent to a record, so far as that purchaser or creditor is

---

The demandant offered the above deed and copy for the purpose of showing that said original deed was recorded; which was objected to, on the ground that the copy described a different piece of land from the original, and ruled out by the court; to which the demandant excepted.

The original deed with the certificate on its back, as above mentioned, was also offered, to prove the record, by the demandant; but objected to and ruled out by the court, for the reason of the allegation of the demandant that the deed was not truly recorded; to which the demandant excepted.

The tenant claimed the premises, by virtue of an attachment and levy thereon, as the property of the grantor in the aforesaid deed,—the attachment on his writ being made after the aforesaid deed was received by the register of deeds, but before the existence of the deed came to his actual knowledge.

A verdict was taken for the tenant, by direction of the court, which the demandant moved to set aside because of errors in said rulings and directions of the court.

It was ordered that the questions arising in this case be reserved and assigned for the determination of the superior court of judicature.

C. W. WOODMAN, Pres. Justice.

A true copy,—ATTEST:    J. D. SLEEPER, Clerk C. C. Pleas.

A true copy,—ATTEST:    J. D. SLEEPER, Clerk S. C. J.

*Pike & Barnard,* for the demandant.

*Kittredge,* for the tenant.

The counsel for the demandant furnished the following brief, citing numerous authorities:

The case finds that the deed on which the questions arise in this case was in the possession of the tenant's counsel, and after a notice to produce it it was withheld. Under such circumstances we should have been allowed to put in not only the contents, but also the certificate of registry on the back of the deed. In other words, we should have been permitted to show, if we could by secondary evidence, all there was in and upon the deed, and to stand just as well when that was shown as if the deed itself had been offered in evidence in the usual manner.

A mere *allegation* of counsel, stating for the information of the court the reasons for pursuing a particular course, should not be construed into admissions superseding the necessity of the opposite party's showing by proper evidence what they would otherwise be bound to prove. The demand-

concerned, which does not with equal force require us to hold, in the present case, that actual notice ·to the defendant of a sale of these· shares was equivalent, so far as its rights as a creditor are concerned,

---

ant at the trial of the case at bar alleged, as a reason for pursuing the course he did, that there was an error as he supposed in the record of his deed, but distinctly stated he made no admissions to go·into .the case with the intention of throwing the proof of that fact, if such it was, upon the tenant, where it rightfully belonged. The case also finds that he proposed to put in the original deed, which he had a right to do.

The original deed, with the certificate of registry which the case finds was upon it, would undoubtedly have been *prima facie* evidence on an enrollment. The ruling of the court was therefore wrong in excluding the evidence of the certificate of record.

The other question raised in this case we understand to be, substantially, whether the grantee in a deed, or a subsequent attaching creditor of the grantor, is to suffer from the misconduct of the recording officer. The deed in the case at bar had been recorded; as the grantee supposed, but, as appears by comparing the office copy with the original, the word " southerly " in the original deed was placed upon the record " northerly."

We say *first,* as between the grantee and the public, the register of deeds is the servant of the latter—for he is a public officer chosen by ballot by the inhabitants of the towns and places in the county,—Comp. Stats., chap. 21, sec. 2—and before entering upon his duties must give a bond with sureties for their faithful performance. Same, chap. 23, sec.·1.

And *secondly,* as between the grantor and grantee, the registry of a deed adds nothing to its validity,—the object of the enrollment being to give public notice of the sale and transfer of the property. *Brown* v. *Manter,* 22 N. H, 468.

The statute, then, requiring deeds to be recorded, is made for the benefit of the public, who do not otherwise know of the sale and transfer of real estate. It in no way adds to or takes from the title already obtained by .the grantee from the grantor, but it is so far a duty, imposed upon every purchaser of real estate, not for his own but for others' benefit.

This being so, we think it must follow that where a grantee carries his deed to the register's office, and receives it again from the register with a certificate on it signed by him stating that it had been "received for record," ·" recorded," and " examined," as is the custom at this present time, he must be regarded as having complied with the law; and if, through fraud or negligence, the deed is not recorded correctly, the grantee should not suffer. This also throws the loss, if any there be, or trouble arising from the neglect or misconduct of the register, on the proper person,—the subsequent purchaser or the attaching creditors of the grantor: they are a part of the public for whom the register acts as a public officer or agent, and to whom he should be responsible.

to a transfer entered in due form upon its books. This view is sustained by *Gooding* v. *Riley*, 50 N. H. 400, where the chief justice, upon an exhaustive review of the authorities bearing upon the question, arrives at the conclusion that purchasers or mortgagees of personal property, having notice of a prior outstanding equitable title, are affected by such knowledge in the same way and to the same extent as the grantee of land is affected by knowledge of a prior unrecorded deed; that both stand upon the same equitable principle.

The same result, substantially, is reached, if we consider that the omission of the plaintiff to have the transfer recorded places him in the same position as a purchaser of chattels, who permits them to remain in the hands of the seller after the sale.

Taking that view, the consequence contended for by defendant's counsel does not follow. The circumstance of such retention of possession may be explained. It is true that, in the absence of explanation, a secret trust will be presumed; but when an explanation is offered, it is for the jury to say, under proper instructions, whether the explanation is sufficient; and the fact that possession was so retained, is for them to weigh in connection with all other evidence bearing upon the actual character and complexion of the transaction between the parties.

---

Elaborate oral arguments were made by the counsel on both sides, the minutes of which, now in my hands, show that every case which up to that date could be found in any text-book, report, or digest, and which could be supposed to throw any light upon the questions, was brought to the attention of the court. The court were unanimous. The able and exhaustive opinion was never published, having gone the way of many others. Judge Woods, in alluding to the fact, was accustomed to say, in a playful way, that his best opinions and soundest law had failed to be published. The pith of the opinion (July term, 1855) was:

Woods, C. J.  1. The certificate of the recording officer, made on the original deed in pursuance of the duties of his office, was *at least prima facie* evidence that the deed had been properly recorded, and should have been received.

2. That when the grantee properly placed (through his agent) a deed properly made and lawfully executed in the hands of the register, his duty was done. He had exercised due diligence, and *laches* could not be imputed to him.

3. That the grantee's title rests not on the statute of enrollments, but the contract embodied in the deed; that the register was not the agent of the grantee; that the tenant was one of the public for whom the register acts officially, and to whom he is responsible for such gross carelessness or fraud; and that the demandant must prevail.     "*Verdict set aside.*"

REPORTER.

Here the defendant had notice of the sale and assignment, and, as we hold, of all the facts attending the transaction, for the reason that Barton, its general agent, by whose knowledge it is bound, was a party to the transaction and knew all about it.    Under these circumstances it can hardly be heard to say that it inferred fraud from the plaintiff's conduct, as a conclusion of law, when it knew, as matter of fact, that no fraud did really exist.

Suppose, after the sale by Barton to the plaintiff, Barton had sold the same shares again and applied the proceeds of such sale to his own uses.    If the second purchaser were ignorant of the prior sale, he would get a good title, although Barton would have been guilty of a fraud against the plaintiff of the. most gross and flagrant character. But if this second purchaser had notice of the former sale—was aware of the situation of the title as between Barton and Scripture—by concerting with the former to deprive the latter of his property he becomes a party to the fraud, and no process of reasoning, in logic or morals, will lead to any other result but that he would be equally guilty with the seller.    To hold that such a purchaser acquired a good title would be to countenance the most scandalous bad faith and encourage dishonesty.

The difference between an attempt to gain a title under such circumstances by purchase and by an attachment is not very apparent, and certainly not very broad.    At all events, we think it entirely clear that what cannot be accomplished in one way cannot be brought about in the other.

In any view we are able to take of the case, we think the question for the jury is, whether the sale by Barton to Scripture was a *bona fide* sale, or whether it was so tainted with a secret trust, or other element of fraud in fact, that it cannot be sustained ; and upon that question the price paid for the shares as compared with their actual value, the omission of plaintiff to have the transfer recorded, and all other facts and circumstances tending to throw light upon the actual character of the transaction, will be proper evidence for the jury to consider.    In short, that the sale may be attacked in the same manner and upon the same grounds as though the transfer had been entered upon the books of the corporation at the time the fact of the sale was brought to its knowledge.

                                                    *Case discharged.*